## CIRCUIT COURT OF BALTIMORE CITY.

Filed July 19th, 1899.

ROBERT TAYLOR
VS.
VIRGINIA TAYLOR, ET AL.

*William H. Dawson* for plaintiff.
*Stewart Brown* for defendant.

STOCKBRIDGE, J.—

The legal question which this case presents is somewhat novel, and authorities directly in point have not been cited to the Court by counsel for either side, nor has the Court, after an examination, been able to find any which are necessarily controlling. By the deed of trust in this case was specifically retained to the grantor in the deed, to make such disposition of corpus as well as income of the estate during his lifetime as he might see fit, and if there were nothing in the case but the deed it could not be seriously contended but what there was full power in the grantor and *cestui que* trust for life, not merely to request, but to require the trustees in the exercise of the reserved power, to dispose of the whole or any part of the estate, and to permit the grantor to use the same in any manner that he might see

fit, but some years after the execution of the deed, and after the grantor and *cestui que* trust for life had exercised in part, the reserved power by the transfer of certain portions of his property to two of his children, we find an agreement entered into by all of his children, or their legal representatives, for a passage of a decree, and which agreement is assented to by the grantor and *cestui que* trust for life, and thereupon a decree passed, which by its terms makes the family agreements a part of it as to its various provisions. By this agreement and decree the property which had passed, or was intended to have passed under the deed, is fully scheduled, and the trustees are declared to hold it upon the same uses and trusts, and for the same purposes as are set out in the deed, but there is no mention whatever, in either the agreements or the decree of the reserved power contained in the deed, and the question which therefore arises is, did the agreement and decree destroy the power so that it thereafter no longer existed, or was the power transferred, and if so, to whom or to what, or does the declaration in the agreement and decree, that the property is to be held upon the same uses and trusts as are declared in the deed, carry with it as an integral part thereof the powers over the corpus created by the deed. If this were a question arising under a will, it seems perfectly clear under the cases of Worthington vs. Owings, 9 g. 195, and Brome V. Pembroke, 66 Md. 193; that there would be no power whatever to in any manner encroach upon the corpus of the trust estate, for any one, or all, of the beneficiaries named therein, but the trust in this case differs in some respects from the trust ordinarily created by a will. In the first place it is created by a deed, and it is therefore proper to determine, if possible, the objects intended to be attained by the execution of this deed. A reading of the deed leaves little room for doubt that it was the primary object in the mind of the grantor to make provision for his own needs during his declining years, possibly also to avoid impending legal liabilities, and it may have been to relieve himself, if he desired, from the burden of active attention to business affairs, and that with this accomplished, the next object was to make proper and suitable distribution of his property, or such and so much of it as he should not have exercised his reserved power over, among his children. These being the objects of the deed, what then was the effect of the family agreement and decree? If its purpose was to leave in full force and virtue all the trusts set out in the deed, and affirmed by the decree, and to continue them subject to all of the powers theretofore possessed by Mr. Taylor by virtue of the deed, the agreement and decree amounted to nothing; the making of the one and obtention of the other was a purely idle act, and that is not to be inferred if there is any other reasonable construction to be placed upon the transaction. If, on the other hand, it was the intent and purpose to utterly destroy all power of control over the corpus upon the part of any one, then such intent ought somewhere to have clearly appeared, either in express words or by necessary implication in either the agreement or decree, or both. Yet, with respect to this, both agreement and decree are entirely silent. The reason for the formulation of the agreement and the obtention of the decree is not entirely apparent, but so far as it can be reasonably deduced from the papers themselves, that is, taking the deed, the agreement and the decree, and reading them together and all their parts, the purpose would seem to be about this—that for some reason or other it was deemed unwise by the children and *cestui que* trust in remainder that the grantor in the deed, who was the *cestui que* trust for life, should continue to be in possession unrestrictedly of the reserved powers contained in the deed, but that there was no intent or purpose in any manner to affect, limit or abridge the purposes or objects for which the trust was created, and by the agreement and decree the objects of the trust were distinctly declared and affirmed, while the power of disposition of the corpus, theretofore vested in Mr. Taylor, ceased to be a power within his capacity to exercise, and by omitting any abrogation of the power over the corpus from the agreement and decree, the exercise of such power was transferred to and vested in the trustees as to the corpus, acting under the direction and subject in all respects to the authority and approval, and control of the Court of Equity which had

passed the decree and acquired jurisdiction over the trust estate. Thereby it became possible that each and all of the objects and intents of the grantor might be fully carried out, and the corpus of the estate placed in the control, not of any *cestui que* trust who, acting it might be upon some impulse or caprice, would have it in his power to create a waste of the property, but by making it subject to direction of the Court there would be secured, 1st, that which was the primary object of the trust, to wit, the maintenance of the grantor during his remaining years of life, in such reasonable comfort as the amount of the trust estate and his wonted mode of living made possible and proper, while under such supervision, the danger of extravagance or waste would be guarded against, and thereby, the interests of the remaindermen preserved, comformably to the purpose of the deed.

In this manner it would be within the power of the Court, if at any time, by reason of diminution of the income, or it may be its entire stoppage, upon a proper case shown to so utilize the fund that Mr. Taylor, the grantor, would not be left in a condition of want or an object of charity, but for such a purpose, such portion of the corpus of the estate might be used as should be necessary. What has actually occurred, out of which these proceedings have arisen, has been that a diminution of the income has taken place, and there is an indebtedness now existing; not, strictly speaking, it is true, entirely an indebtedness of Mr. Taylor's, individually, but it is an indebtedness upon items which he had previously been accustomed to pay as maintaining his home and household, and while they amount to something more than what would have been the ordinary allowance for his maintenance, in view of the peculiar circumstances of this case, the Court does not feel disposed at this time to reject the items. An order will therefore be signed authorizing the payment by the trustees, out of the funds in their hands, of the several items mentioned and appearing on defendant's exhibit examiner P. E. T. No. 2, together with the costs incident to the present proceeding, and retaining the balance of the fund subject to the further order of the Court in the premises.